IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. WILLIAM G. MONTGOMERY, Maricopa
County Attorney, *Petitioner*,

*v.*

THE HONORABLE MICHAEL W. KEMP, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

DARREN CORTIZ DAVIS, *Real Party in Interest*.

No. 1 CA-SA 16-0031
FILED 4-7-2016

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2014-001685-001 DT
The Honorable Michael W. Kemp, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Petitioner*

Law Office of David L. Lockhart, Phoenix
By David L. Lockhart
*Counsel for Real Party in Interest*

**OPINION**

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

**W I N T H R O P**, Judge:

¶1        In this special action, the State of Arizona challenges an order denying the State's request for an alleged sexual assault victim ("E.P.") to testify via two-way video conferencing during the trial of her alleged assailant, Real Party in Interest Darren Cortiz Davis.

¶2        E.P. is an adult who currently lives in Montana and suffers from numerous mental and physical difficulties, including post-traumatic stress disorder ("PTSD") and non-epileptic seizures.  These difficulties are well-documented—so much so that a Montana trial court refused to compel E.P. to testify in Arizona, finding she would suffer psychological harm if required to be in the same room with Davis.  E.P. has, however, indicated a willingness to testify before the jury and Davis from Montana, utilizing two-way video conferencing technology.  Under the State's requested trial accommodation, E.P. and Davis would hear each other and see each other, face-to-face, via two-way video, but would not be in the same room during E.P.'s testimony.  Relying on the principles set forth in *Maryland v. Craig*, 497 U.S. 836 (1990), and its progeny, we accept jurisdiction and grant the relief sought by the State.

## FACTS AND PROCEDURAL HISTORY

¶3        A grand jury indicted Davis on two counts of sexual assault involving E.P., each a class 2 felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1406 (2010).  The State alleges that, on January 2, 2003, Davis kidnapped then-twenty-year-old E.P., threatened to harm her and her family if she did not cooperate, physically assaulted her, and forced her to engage in two nonconsensual sexual acts.

¶4        Sometime after the alleged assault, E.P. moved to Montana, where she is currently under the care of a psychiatrist and another medical doctor. E.P. suffers extreme mental and physical distress, and at some point in time, the prosecutor in Arizona became aware that, due to the trauma

and resultant illnesses, stress, and anxiety, E.P. likely would not voluntarily testify against Davis in Arizona.

¶5        According to E.P.'s psychiatrist—who has treated E.P. since she was in high school—E.P. was in a fragile mental state before the alleged assaults, receiving psychiatric treatment for Major Depressive Disorder with psychotic features.  In a letter to the prosecutor, the psychiatrist opined that,

> subsequent to her rape in Arizona, [E.P. suffers from] a Post-Traumatic Stress Disorder that exacerbated the primary diagnosis.  In addition, [E.P.] has a diagnosis of non-epileptic seizures and several other medical problems that are more likely than not related to her psychiatric disorders.
>
> Since her sexual assault, [E.P.] has been in and out of hospitals several times.  She has made several attempts on her life.  What could have been a reasonably promising prognosis from her depression has been altered by the assault.  For years she was barely able to function.  In the past year or two, fortunately, she has started going back to school, is making healthy friendships and living somewhat independently.  In my professional opinion, returning to Arizona to testify against her assailant would almost certainly set her back several years in her recovery.  My recommendation is that she not travel and not testify in front of her perpetrator.

¶6        According to E.P.'s medical doctor for the past six years, E.P. presently experiences non-epileptic seizures and severe abdominal/pelvic pains as a result of her anxiety associated with testifying in court.  The doctor has confirmed that E.P. "has a history of complex partial seizures related to an assault in her past where she was beat about her head."  E.P. therefore experiences both real and pseudoseizures.  E.P. also experiences severe migraines and has intractable emesis (repeated bouts of vomiting resistant to medical treatment) when her anxiety level is too high, and in the doctor's opinion, E.P.'s severe anxiety issues and chronic pelvic pain are "a direct result of this past assault."  Moreover, E.P.'s chronic pelvic pain has resulted in other serious medical complications.  In the doctor's opinion, E.P. will likely experience severe stress, anxiety, and resultant pseudoseizures if she testifies in court in Davis's presence.

¶7        The State filed a petition to secure E.P.'s appearance at trial by moving for the trial court to issue a certificate asking the State of Montana

to issue a subpoena to compel E.P.'s attendance under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* A.R.S. §§ 13-4091 to –4096 (2010); MCA 46-15-112 to 46-15-120 (2015). A certificate to secure the attendance of E.P. was filed in the Montana trial court, which ordered E.P. to show cause why an order should not be issued compelling her to attend the criminal prosecution of Davis.

¶8 After a three-day evidentiary hearing—at which E.P. and her mother testified, and the court received the medical doctor's most-recent written opinion—the Montana court ultimately found E.P. is a material and necessary witness in the State's case against Davis, but that E.P. would experience undue hardship in the form of physical and psychological harm by being forced to testify in the same room with Davis. As a result, the court quashed the out-of-state subpoena and declined to order E.P. to attend any proceedings in Arizona.

¶9 In Arizona, the State moved to take E.P.'s deposition in Montana (with counsel physically present or with defense counsel and Davis participating electronically) and asked the court to find E.P. unavailable and allow her video deposition to be admitted at trial in lieu of her live testimony. Davis objected to the taking of E.P.'s deposition and argued that if the court should allow E.P. to be deposed, he had the right under the Confrontation Clause of the Sixth Amendment to be physically present at the deposition.

¶10 The trial court ruled that E.P. was an unavailable witness under Arizona Rule of Evidence 804(a)(5). The court further found that the State had made a good faith effort to produce E.P.; however, because Davis refused to waive his right to be present at the deposition, *see* Ariz. R. Crim. P. 15.3(e), the court ruled that the State could introduce E.P.'s testimony via video deposition only if the deposition was recorded in Davis's physical presence. The State claims the trial court's order requiring the State to transport Davis to Montana if the State deposed E.P. was unworkable because it ran counter to the Montana court's conclusion that E.P.'s unavailability was based on the harm she would experience if forced to be in the same room as Davis.

¶11 The State then filed a request for E.P. to testify via two-way video conferencing during trial, a means of testifying the State avows E.P. is amenable to accepting. The trial court denied the request. The State then filed this petition for special action.

## JURISDICTION

**¶12** Special action jurisdiction is proper when an issue is one of first impression, involves a purely legal question, is of statewide importance, or is likely to arise again. *State v. Bernini*, 230 Ariz. 223, 225, ¶ 5, 282 P.3d 424, 426 (App. 2012); *State ex rel. Romley v. Martin*, 203 Ariz. 46, 47, ¶ 4, 49 P.3d 1142, 1143 (App. 2002); *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App. 1992). The State asks us to resolve an issue of first impression in Arizona—the constitutionality of utilizing two-way video testimony at trial under the Confrontation Clause—that is a legal issue of statewide importance and likely to recur. Moreover, the State has no equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R.P. Spec. Act. 1(a); *Lindsay R. v. Cohen*, 236 Ariz. 565, 566-67, ¶ 5, 343 P.3d 435, 436-37 (App. 2015). Accordingly, we accept special action jurisdiction.

## ANALYSIS

**¶13** The State argues the trial court erred as a matter of law by not applying the *Maryland v. Craig* standard to the State's requested accommodation for E.P. to testify via two-way video during trial. *See* 497 U.S. at 849 (recognizing that the Confrontation Clause's preference for face-to-face confrontation at trial "must occasionally give way to considerations of public policy and the necessities of the case" (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895))).

**¶14** In general, we review a trial court's orders in managing proceedings for an abuse of discretion. *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13, 224 P.3d 215, 218 (App. 2010). We review *de novo*, however, issues involving the Confrontation Clause. *See State v. Bronson*, 204 Ariz. 321, 324, ¶ 14, 63 P.3d 1058, 1061 (App. 2003).

**¶15** The Sixth Amendment to the United States Constitution guarantees that, in all criminal prosecutions, the accused has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause has been construed as "guarantee[ing] the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Its central concern "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding." *Craig*, 497 U.S. at 845. Face-to-face in-court testimony serves several purposes: (1) it "ensures the reliability of the evidence by allowing the trier of fact to observe the demeanor, nervousness, expressions, and other body language of the witness"; (2) it "impresses upon the witness the seriousness of the

matter and ensures that statements are given under oath"; and (3) it "helps assure the identity of the witness, that the witness is not being coached or influenced during testimony, and that the witness is not improperly referring to documents." *United States v. Hamilton*, 107 F.3d 499, 503 (7th Cir. 1997). The United States Supreme Court has emphasized the fundamental role face-to-face confrontation plays in judicial proceedings, noting "there is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'" *Coy*, 487 U.S. at 1017 (quoting *Pointer v. Texas*, 380 U.S. 400, 404 (1965)).

¶16        While recognizing the Constitution's *preference* for face-to-face confrontation, however, the Supreme Court has clarified that the right to face-to-face confrontation is not absolute. *Craig* set forth a test for abridging the preference for face-to-face confrontation with video testimony: the State must show that (1) the denial of face-to-face confrontation is necessary to further an important public policy; (2) the reliability of the testimony is otherwise assured; and (3) there is a case-specific showing of necessity for the accommodation. *Id.* at 850. Although Davis notes that *Craig* involved one-way closed circuit television and child witnesses, including the alleged victim, who could not see or hear the defendant, nothing in its holding suggests its application is limited to such cases. *See People v. Wrotten*, 923 N.E.2d 1099, 1103 (N.Y. 2009) ("Nowhere does *Craig* suggest that it is limited to child witnesses or that a 'public policy' basis for finding necessity must be codified. Indeed, federal courts have permitted live video testimony in a variety of circumstances, including instances where public policy is implicated by a key witness too ill to appear in court . . . ." (citing *Horn v. Quarterman*, 508 F.3d 306, 317-18 (5th Cir. 2007); *United States v. Benson*, 79 Fed. Appx. 813, 820-21 (6th Cir. 2003); *United States v. Gigante*, 166 F.3d 75, 79 (2d Cir. 1999))).

¶17        Since deciding *Craig*, the Supreme Court has not further examined the constitutionality of remote video testimony or considered new types of technology available to facilitate remote testimony, such as the two-way video conferencing the State seeks to use in this case that would allow E.P. and Davis to hear and see one another simultaneously. *See State v. Rogerson*, 855 N.W.2d 495, 499-500 (Iowa 2014); *see also Wrotten v. New York*, 560 U.S. 959, 959 (2010) (Sotomayor, J., respecting denial of petition for writ of certiorari) (noting that the question of and standards for the use of two-way video testimony in a petitioner's trial "is not obviously answered by *Maryland v. Craig*"). Moreover, no Arizona opinion has addressed the question of allowing adult witnesses to testify using two-way video technology.

¶18        Numerous federal and state courts have extended *Craig* to the use of two-way video testimony for adult witnesses. *See, e.g., United States v. Yates*, 438 F.3d 1307, 1313 (11th Cir. 2006) (acknowledging *Craig* as the proper test for the admissibility of two-way video conference testimony and noting agreement with the Sixth, Eighth, Ninth, and Tenth Circuits); *Rogerson*, 855 N.W.2d at 506-07 (Iowa Supreme Court approving the use of two-way video testimony for adult witnesses, provided the *Craig* factors are met); *White v. State*, 116 A.3d 520, 540-49 (Md. Ct. Spec. App. 2015) (applying *Craig* to allow a witness in a cold case to testify by two-way video because it would be "cruel and unnecessary to require her to fly" given her health concerns); *People v. Buie*, 775 N.W. 817, 825 (Mich. Ct. App. 2009) (applying *Craig* to two-way video testimony, "[l]ike the majority of federal courts that have examined this issue"); *City of Missoula v. Duane*, 355 P.3d 729, 734 (Mont. 2015) (applying *Craig* to allow the two-way video testimony of a doctor whose testimony in three trials would cause a prohibitive expense to the city and place a significant burden on the doctor); *Commonwealth v. Atkinson*, 987 A.2d 743, 750-51, ¶¶ 16-17 (Pa. Super. Ct. 2009) (applying *Craig* and concluding that the defendant's right to confrontation had been violated because expediting disposition of the case was an insufficient reason for allowing the use of two-way video testimony); *Bush v. State*, 193 P.3d 203, 215-16, ¶¶ 52-53 (Wyo. 2008) (applying *Craig* to allow a witness's testimony via two-way video "to further the important public policy of preventing further harm to his already serious medical condition").

¶19        Assuming that two-way video testimony is not the equivalent of face-to-face confrontation,[1] we adopt the *Craig* standard for the use of two-way video testimony and apply the *Craig* factors to the State's requested accommodation. The use of two-way video conferencing can satisfy a defendant's right to face-to-face confrontation in certain limited circumstances like those present here.

---

[1]        *See State v. Smith*, 308 P.3d 135, 137 (N.M. Ct. App. 2013) (citing *Harrell v. State*, 709 So. 2d 1364, 1368–69 (Fla. 1998) (declining to find live satellite testimony to be equivalent to live, face-to-face testimony)). *But see Gigante*, 166 F.3d at 81 (holding that when a trial court used a two-way video system, face-to-face confrontation was preserved and it was therefore unnecessary to enforce the *Craig* standard); *United States v. Gigante*, 971 F. Supp. 755, 759 (E.D.N.Y. 1997) ("[T]he [two-way closed circuit television procedure] proposed by the government in this case satisf[ies] fully the requirements of the Constitution . . . .").

¶20　　　　Applying *Craig*, we conclude that the strong preference for face-to-face confrontation must give way in the special circumstances of this case to considerations of public policy and the necessities of the case.  The State's requested accommodation is necessary to further two important public policies:  protecting the rights of a vulnerable alleged sexual assault victim who has been ruled to be outside Arizona's subpoena power and preserving society's interest in prosecuting accused sexual offenders.  *See Michigan v. Lucas*, 500 U.S. 145, 149-50 (1991) (recognizing Michigan's rape shield law furthers the legitimate state interests of protecting a sexual assault victim from surprise, harassment, and unnecessary invasions of privacy); *United States v. Knights*, 534 U.S. 112, 121 (2001) (recognizing the government has a demonstrated interest in apprehending criminal law violators, thereby protecting potential victims).  Moreover, consistent with *Craig*, protecting a victim-witness's physical and mental health is a legitimate public policy.  *See, e.g., Kramer v. State*, 277 P.3d 88, 93-94, ¶ 19 (Wyo. 2012); *see also* Ariz. Const. art. 2, § 2.1(A)(1) (providing that crime victims have the constitutional right "to be free from intimidation, harassment, or abuse, throughout the criminal justice process").

¶21　　　　In this case, Arizona and Montana trial courts have already found E.P. is a material and necessary witness, and realistically, without E.P.'s testimony, there will be no trial.  The Montana court has already found after hearing evidence that requiring E.P. to testify with Davis present in the same room will cause E.P. to suffer severe emotional and mental trauma with resultant seizures, and it appears that, at this point, no one questions that E.P. will suffer grave harm if required to testify in person.  Thus, without the accommodation for E.P. to testify via two-way video during trial, the State will be forced to choose between protecting E.P.'s mental and physical health and constitutional rights, and preserving Arizona's interest in prosecuting and punishing persons who have allegedly committed sexual offenses.[2]  Because an alternative reliable means of protecting Davis's confrontation rights exists in this case, the State should not be forced to choose.  The State's requested accommodation clearly furthers important public policy concerns.

¶22　　　　The requested two-way video conferencing at issue here should also ensure reliable testimony.   Under the State's requested

---

[2]　　　　Moreover, as the State notes, automatic denial of such a requested trial accommodation may send the message that if a perpetrator of sexual assault causes extreme emotional, mental, and physical harm to his or her victim, the perpetrator is less likely to be prosecuted and convicted.

accommodation, the video will present a "real time" image of E.P. to Davis and the jury, giving an impression of E.P.'s physical presence and demeanor at trial. The two-way video will also allow the trial court to rule on objections as they arise during E.P.'s testimony, allow E.P. to answer any jury questions,[3] and allow Davis to communicate with defense counsel during the cross-examination of E.P., just as he would be able to do if E.P. were physically present. The State can arrange for E.P. to be placed under oath in Montana and ensure E.P.'s testimony is broadcast in a way that would make it impossible for her to improperly refer to documents during her testimony. Most importantly, E.P. will be able to see Davis when she testifies, and Davis will be able to see her. We conclude in these limited circumstances that allowing E.P. to testify via simultaneous two-way video conferencing will not alter the reliability of her testimony or offend Davis's right to confrontation.

¶23        Finally, the State has adequately demonstrated case-specific necessity for the requested accommodation. *See Smith*, 308 P.3d at 138-39 (requiring an adequate showing of necessity and stating that mere inconvenience to a witness is insufficient under *Craig* to supplant face-to-face testimony); *see also State ex rel. Montgomery v. Padilla*, 1 CA-SA 16-0017, 1 CA-SA 16-0027, 2016 WL 1063284, at *3, ¶¶ 9-11 (Ariz. App. Mar. 17, 2016) (concluding the heightened standard of clear and convincing evidence of an individualized and case-specific need for an accommodation applied to minor victim witnesses under A.R.S. § 13-4253 (2010)); *cf. Rogerson*, 855 N.W.2d at 506-07 (recognizing that most courts "seem to require some impediment to testifying beyond mere unwillingness to travel," and noting that a general consensus exists "that mere convenience, efficiency, and cost-saving are not sufficiently important"). In this case, E.P. is beyond the State's subpoena power, and forcing her to testify in Davis's physical presence—whether in a deposition in Montana or at trial in Arizona—would result in severe mental and physical trauma to E.P. Two medical professionals have opined that E.P. will suffer a myriad of physical ailments related to her PTSD—including seizures, severe abdominal/pelvic pains, severe migraines, and intractable emesis—if she is required to testify in Davis's physical presence, and the Montana trial court has found that forcing E.P. to testify in Davis's presence will cause her to suffer undue hardship due to the gravity of the ailments related to the PTSD and the associated stress, anxiety, and severe psychological harm. This case

---

[3]        Arizona Rule of Criminal Procedure 18.6(e) provides for the submission of juror questions to the court or witnesses during trials.

presents extraordinary circumstances, and a compelling case-specific necessity that justifies the State's requested accommodation.

## CONCLUSION

**¶24** We adopt the *Craig* test, and applying it to this case, conclude that Davis's confrontation rights can be satisfied through the use of two-way video testimony. Accordingly, we accept jurisdiction of the petition for special action and grant relief. The trial court's order is reversed and the matter is remanded with directions to allow the State's requested trial accommodation.



**Ruth A. Willingham** · Clerk of the Court
FILED: ama