NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EARL KELLY JOHNSON, *Appellant*.

No. 1 CA-CR 21-0015
FILED 11-23-2021

Appeal from the Superior Court in Yavapai County
No. P1300CR201801304
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Earl Kelly Johnson ("Johnson") appeals his convictions and sentences for conspiracy to transport dangerous drugs for sale, transportation of dangerous drugs for sale, and second-degree money laundering.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Detectives arrested a married couple, R.W. and P.W.,[1] after they attempted to transport twenty pounds of methamphetamine through Yavapai County.  The couple planned to deliver the methamphetamine to Kentucky.  Detectives located other indicia of drug sales in the couple's vehicle and valued the methamphetamine at approximately $900,000.

¶3        R.W. cooperated with detectives and admitted that Johnson paid them to transport methamphetamine from Arizona to Kentucky.  R.W. also participated in a confrontation call with Johnson.  During that call, R.W. claimed that their vehicle broke down and they needed money to "get the dope" to Johnson.  Johnson agreed and sent R.W. money for the repairs.

¶4        Though reluctant, P.W. eventually cooperated with detectives and admitted to transporting methamphetamine at Johnson's direction. Both R.W. and P.W. told detectives that Johnson went by the nickname "Tooter."  Other cooperating witnesses, including a confidential informant, confirmed that a person named "Tooter" was involved in orchestrating the transaction.

¶5        A grand jury indicted Johnson on one count of conspiracy to transport dangerous drugs for sale, a class 2 felony, transportation of dangerous drugs for sale, a class 2 felony, and two counts of second-degree

---

[1]        Since the commission of the offenses at issue here, Johnson was indicted on charges related to R.W.'s murder.  Because R.W. and P.W. are victims in that case, we use initials to protect their privacy.  *See* Ariz. R. Sup. Ct. 111(i); *State v. Maldonado*, 206 Ariz. 339, 341, ¶ 2 n.1 (App. 2003).

money laundering, class 3 felonies. After a three-day trial, a jury convicted Johnson as charged. The superior court sentenced Johnson to an aggregate term of eight years' imprisonment. Johnson timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.      Identification Using Two-Way Video Technology

**¶6**          Johnson argues the superior court violated his constitutional rights by allowing P.W. to provide identification testimony using two-way video technology. Johnson claims that measures taken to ensure the reliability of the identification were insufficient. We review the superior court's management of trial proceedings for an abuse of discretion, but review related constitutional challenges de novo. *See State v. Superior Court (Davis)*, 239 Ariz. 332, 335, ¶ 14 (App. 2016).

**¶7**          The right to confront witnesses is meant to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Though face-to-face confrontation of witnesses is favored, video testimony may be appropriate based on "considerations of public policy and the necessities of the case." *Davis*, 239 Ariz. at 336, ¶ 20 (citing *Craig*, 497 U.S. at 849). In determining whether video testimony may replace face-to-face confrontation, "the State must show that (1) the denial of face-to-face confrontation is necessary to further an important public policy; (2) the reliability of the testimony is otherwise assured; and (3) there is a case-specific showing of necessity for the accommodation." *Id.* at 335-36, ¶¶ 16, 19 (adopting the *Craig* standard for the use of two-way video testimony) (citation omitted).

**¶8**          Before trial, the State moved to allow P.W. to testify using two-way video technology. The State based this request on P.W.'s age, significant health issues, out-of-state status, and the need to minimize the risk and spread of COVID-19. The State cited to an Arizona Supreme Court administrative order, which provided that the superior court "should limit in-person contact in the course of court business as much as possible by using available technologies." *See* Ariz. S. Ct. Admin. Order No. 2020-114 at § 2. Over Johnson's objection, the superior court granted the motion. In a detailed minute entry, the superior court found that video testimony furthered important public policies regarding the COVID-19 pandemic, "real time" two-way video technology ensured reliability, and P.W.'s

significant health issues created a case-specific need for the accommodation.

¶9          At trial, the State avowed that the two-way video technology had been tested and P.W.'s device was set up in a secure location. The superior court added that the video testimony would be played on a large screen, and technology specialists would be available if any issues arose. P.W. testified via two-way video and identified Johnson as the person who hired P.W. to transport methamphetamine through Arizona. Before the identification, Johnson stood and removed his mask and P.W. moved closer to the video screen for a better vantage point. There were no reported video or audio issues with the testimony.

¶10          The superior court made express findings that the video testimony was appropriate based on public policy concerns and the specific needs of the case. As the superior court noted, the two-way video technology allowed jurors to adequately assess P.W.'s demeanor and credibility. Nothing from the record indicates the video or audio malfunctioned in any way. The superior court acted within its discretion in using alternative methods to minimize the spread of COVID-19 and the particular risk it posed to P.W.'s health. Johnson's constitutional rights were not violated, and we find no abuse of discretion.

II.          Failure to Preserve Recording of Confrontation Call

¶11          Johnson argues the State's failure to preserve a recording of the confrontation call violated his right to potentially exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Because Johnson failed to directly advance this claim below, we limit our review to fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140-42, ¶¶ 12, 21 (2018).

¶12          Due process requires the State disclose evidence that is favorable to the defense and material to a defendant's guilt. *Brady*, 373 U.S. at 87. The "mere possibility" that undisclosed evidence "might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). It is not enough to speculate that lost or destroyed evidence could have exculpated the defendant. *See State v. Youngblood*, 173 Ariz. 502, 506 (1993) ("Speculation is not the stuff out of which constitutional error is made."); *see also State v. O'Dell*, 202 Ariz. 453, 458, ¶ 13 (App. 2002). Without more, the State's failure to preserve potentially favorable evidence does not amount to constitutional error

unless the defendant shows the State acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

¶13 At trial, a detective testified as to the contents of R.W.'s confrontation call with Johnson. In pertinent part, R.W. asked for money to repair the vehicle being used to transport the "dope" and Johnson agreed. Although the detective recorded the call, he could no longer find a copy of the recording. In providing this testimony, however, the detective confirmed that he reviewed his police report and relevant data from R.W.'s cellular phone. Johnson did not object to the detective's testimony, nor did he argue the State violated its disclosure obligation under *Brady*.

¶14 Johnson has not established that the recording of the confrontation call would have differed from the detective's testimony or provided information favorable to the defense. The mere possibility that Johnson might have been prejudiced by the State's failure to preserve the recording does not constitute a *Brady* violation. *See State v. Youngblood*, 173 Ariz. at 506. Moreover, Johnson has not demonstrated, or even argued, that the State acted in bad faith in failing to preserve the recording. On this record, we cannot find error, fundamental or otherwise.

**CONCLUSION**

¶15 We affirm Johnson's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA