NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MUSA MOHAMED IBRAHIM, *Appellant.*

No. 1 CA-CR 25-0299

FILED 06-15-2026

Appeal from the Superior Court in Mohave County
No. CR-2022-01453
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

COUNSEL

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Christine Davis
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

**¶1**          Musa Mohamed Ibrahim appeals his conviction for one count of sexual assault. He argues there was insufficient evidence to support the jury's finding of territorial jurisdiction. He also argues the court violated his right to present a complete defense and his right to confrontation. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**          In May 2021, Mary[2] began working as a truck driver for Prime, Inc. ("Prime"). Prime assigned Ibrahim to be her trainer. Their first drive was a cross-country trip from Missouri to California, making stops in Texas, New Mexico, and Arizona. As they drove, Ibrahim repeatedly complimented Mary's appearance and touched her, making Mary uncomfortable.

**¶3**          At one point during the drive, Ibrahim and Mary stopped at a remote desert location to get some sleep. While Mary was laying on the bed, Ibrahim "act[ed] like he was losing [his] balance" and fell on top of Mary. He then held Mary down while he grabbed her, smacked her thighs, and vaginally penetrated her.

**¶4**          Mary contacted Prime for help and was referred to Brooke Phares, Prime's driver liaison. Mary told Phares that Ibrahim sexually harassed her, so Phares instructed Mary to fake a family emergency, which she did. Ibrahim dropped Mary off at a hotel in Barstow, California, where another driver later picked her up and drove her back to Missouri. Mary

---

[1]          We view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against Ibrahim. *State v. Allen*, 253 Ariz. 306, 339 ¶ 99 (2022).

[2]          We use a pseudonym to protect the victim's privacy. *See* Ariz. R. Sup. Ct. 111(i); Ariz. R. Crim. P. 31.10(f).

met Phares in Missouri and went to a hospital to be examined and interviewed by the police. During the interview, Mary stated that after the assault, she thought she saw a sign that said Flagstaff was "100 and something miles away."

**¶5**        The police interviewed Ibrahim when he returned to Missouri at the start of June 2021. Ibrahim denied the assault and gave a DNA sample to the police.

**¶6**        In December 2022, a grand jury in Mohave County indicted Ibrahim on one count of sexual assault. The State was unable to serve Ibrahim and requested an arrest warrant, which the court granted. Ibrahim was arrested in May 2024 during a commercial vehicle inspection after a records search revealed the arrest warrant.

**¶7**        In March 2025, Ibrahim filed a motion to dismiss for lack of jurisdiction, arguing Mary's statement about seeing a Flagstaff sign "alleged indirectly that New Mexico was the location of the alleged sexual assault." The court denied Ibrahim's motion, explaining the State must prove territorial jurisdiction to the jury. Ibrahim also filed a motion to preclude the State's witnesses from testifying over Zoom, which the State followed with a motion to allow Phares to testify remotely. The court granted the State's motion based on hardship to Phares.

**¶8**        Trial began in June 2025, and on the second day, Ibrahim moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20. He argued the State's evidence was insufficient to establish both territorial jurisdiction and that the assault occurred. The court denied the motion, concluding "reasonable minds could differ to what the evidence describes." Two days later, the jury found Ibrahim guilty of sexual assault. After hearing additional arguments at a separate aggravation trial, the jury also found the State proved an aggravating circumstance of physical, emotional, or financial harm. Ibrahim was subsequently sentenced to 10 years in prison with credit for 197 days of presentence incarceration.

**¶9**        Ibrahim timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 13-4031 and -4033(A).

## DISCUSSION

**¶10**        Ibrahim raises three issues: (1) there was insufficient evidence to support the jury's finding of territorial jurisdiction; (2) the court violated

3

Ibrahim's right to present a complete defense and his right to confrontation by excluding evidence of Mary's motive to fabricate the sexual assault; and (3) the court violated Ibrahim's right to confrontation by permitting Phares to testify remotely via Zoom. We address each argument in turn.

## I.    Territorial Jurisdiction

¶11    Ibrahim contends the court should have granted Ibrahim's Rule 20 motion because there was insufficient evidence to support the jury's finding of territorial jurisdiction.

¶12    We review the court's denial of a Rule 20 motion de novo. *State v. Parker*, 231 Ariz. 391, 407 ¶ 69 (2013). The court must enter a judgment of acquittal "if no substantial evidence supports the conviction." *State v. Davolt*, 207 Ariz. 191, 212 ¶ 87 (2004). "Substantial evidence is that which reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Id.*

¶13    Arizona "has jurisdiction over an offense . . . if conduct constituting any element of the offense or a result of such conduct occurs within this state[.]" A.R.S. § 13-108(A)(1). When jurisdictional facts are in dispute, the State must prove territorial jurisdiction beyond a reasonable doubt to the jury. *State v. Willoughby*, 181 Ariz. 530, 538 (1995). Ibrahim argues that there was insufficient evidence to support the jury's finding. We disagree.

¶14    Mary testified that after making a thirty-minute stop, they "drove for some hours" before pulling over at a gas station to get some sleep. During this extended stop, which took place in a desert-like location "late at night or going into the morning," Ibrahim sexually assaulted Mary. When asked if she knew where the assault occurred, Mary testified she "just knew that [she] was in Arizona" because she saw a sign that said Flagstaff was approximately "40 to 100 miles ahead."

¶15    The State also introduced evidence of the truck's GPS coordinates, which showed that the truck made an almost three-hour stop in Monahans, Texas; a thirty-minute stop in Mentmore, New Mexico; a thirty-five-minute stop in Bellemont, Arizona; and a four-hour stop in Valentine, Arizona. After stopping in Valentine, the truck did not stop again until it reached Barstow, California, where Mary was picked up by another Prime driver.

¶16    Mary's testimony that the assault occurred after they stopped to get some sleep is consistent with the GPS coordinates and Ibrahim's

testimony. The GPS coordinates were consistent with Mary's description of their stops and showed the Valentine stop was the longest one. A jury could reasonably infer that this long break was likely used to sleep. *See State v. Allen*, 253 Ariz. 306, 339 ¶ 99 (2022) (noting we resolve all inferences against defendant). Additionally, Ibrahim suggested in his testimony that the four-hour stop in Valentine was for sleep, supporting Mary's testimony.

¶17 Ibrahim counters by highlighting several inconsistencies in the evidence to suggest the assault must have occurred before they reached Flagstaff. He cites Phares's testimony that Mary contacted her about the assault "somewhere . . . around Flagstaff, Arizona." He also points to Mary's trial testimony describing circumstances following the assault that "[o]nce we got back on the road there was a sign that said 'Flagstaff, Arizona,' like either at 40 to 100 miles ahead of us." From that, he argues the sign could only be seen while passing through Monahans, Texas or Mentmore, New Mexico because the truck passed through Flagstaff before reaching Valentine. Ibrahim thus suggests that because they were driving westbound, with Flagstaff behind them, it would have been impossible for Mary to have seen any signs indicating mileage to Flagstaff on the road. But Ibrahim's investigator testified that at the off-ramp of the Valentine exit—where the truck was stopped for the longest period and where the assault was alleged to have occurred—there is a directional sign that points to Flagstaff, which is visible in a video the investigator took that was submitted to the jury. Viewed in the light most favorable to upholding the jury's verdict, this evidence corroborates Mary's testimony about seeing a sign directing towards Flagstaff and therefore constitutes substantial evidence supporting the jury's finding of jurisdiction. *Davolt*, 207 Ariz. at 212 ¶ 87.

¶18 Moreover, even assuming Mary's testimony of seeing the sign with mileage to Flagstaff is inconsistent with Valentine being the location of the assault, that still leaves competent evidence that the assault occurred at the stop for sleep, which the record supports could be Valentine. Because "[w]e resolve any conflicts in the evidence against the defendant," *State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014), such inconsistencies do not overshadow the substantial evidence supporting the jury's finding. We affirm the court's denial of Ibrahim's Rule 20 motion.

## II.    Evidence of Motive

¶19 Ibrahim further argues the court abused its discretion and violated his Sixth Amendment right to present a complete defense and confront witnesses by excluding evidence of alleged motive for Mary to

fabricate the sexual assault. The State argues the evidence is irrelevant, speculative, and fails fundamental error review.[3]

**¶20** We review the court's decision to exclude evidence for abuse of discretion. *State v. Foster*, 258 Ariz. 472, 488 ¶ 65 (App. 2024). But we review the related constitutional issues de novo. *State v. Guarino*, 238 Ariz. 437, 439 ¶ 5 (2015). When a defendant does not object to an error at trial, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19 (2005). Although Ibrahim objected before trial to the exclusion of the evidence at issue, he did not do so on constitutional grounds. As such, we review for fundamental error only. *See State v. Moody*, 208 Ariz. 424, 455 ¶ 120 (2004) ("Absent fundamental error, if evidence is objected to on one ground in the trial court and admitted [or excluded] over that objection, other grounds raised for the first time on appeal are waived.").

**¶21** Before trial, the State sought to exclude evidence of Mary's romantic relationship with another Prime employee, compensation Mary received from Prime following the assault, and subsequent work incidents. The State argued such evidence was irrelevant, prejudicial, and could not be properly admitted at trial. Ibrahim countered that the evidence was relevant because it shows Mary benefited from alleging sexual assault and could be properly admitted through Prime's business records. The court found all the evidence was irrelevant and granted the State's motion to exclude it.

**¶22** Evidence is relevant if it "make[s] a fact more or less probable than it would be without the evidence[.]" Ariz. R. Evid. 401(a). Evidence must be relevant to be admissible. Ariz. R. Evid. 402. Here, Ibrahim argues the excluded evidence was relevant because it establishes an incentive to allege sexual assault, making it more probable that the assault did not occur. But his argument is flawed.

**¶23** Ibrahim's theory is that Mary alleged sexual assault so she could receive the "benefit" of being compensated while waiting to be trained by an employee with whom she had a romantic relationship. But this theory requires Mary to have knowledge of the compensation and future training assignment *before* making the accusation.

---

[3] The State also argues that Ibrahim did not make an adequate offer of proof and thus failed to preserve this issue on appeal. Because we conclude the court did not err in finding the evidence irrelevant, we need not address this issue.

¶24 Ibrahim did not provide any evidence to the superior court or point to any evidence in the record establishing that Mary knew she would be compensated pending the assault investigation. Nor has Ibrahim pointed to any evidence establishing that Mary knew she could be trained by the employee with whom she was romantically involved. To the contrary, Ibrahim acknowledged in his response to the State's motion to exclude evidence that this employee was not hired by Prime until June 22, 2021, and Mary did not request to train with the employee until June 28, both several weeks after she first reported the sexual assault.

¶25 On this record, Ibrahim has not shown that Mary knew of either alleged "benefit" before contacting Prime. Therefore, the excluded evidence is irrelevant because it does not make it more probable that Mary fabricated her accusation. Thus, the court committed no error, let alone fundamental error, by excluding the evidence. Nor could Ibrahim establish any prejudice by the exclusion. *See State v. Oliver*, 158 Ariz. 22, 30 (1988) (limiting Sixth Amendment rights to cross-examine and present a defense "to evidence which is relevant and not unduly prejudicial").

## III.    Zoom Testimony

¶26 Ibrahim argues the court violated his constitutional right to confront witnesses against him by allowing Phares to testify remotely by Zoom.

¶27 We review the trial court's management of proceedings for abuse of discretion but review constitutional issues de novo. *State ex rel. Montgomery v. Kemp*, 239 Ariz. 332, 335 ¶ 14 (App. 2016). While the Confrontation Clause of the Sixth Amendment generally "guarantee[s] the defendant a face-to-face meeting with witnesses appearing before the trier of fact[,]" this right is not absolute. *Id.* at 335 ¶¶ 15–16 (citation modified). Remote testimony may be permitted if the States shows "(1) the denial of face-to-face confrontation is necessary to further an important public policy; (2) the reliability of the testimony is otherwise assured; and (3) there is a case-specific showing of necessity for the accommodation." *Id.* at 335 ¶ 16 (adopting standard in *Maryland v. Craig*, 497 U.S. 836 (1990)). Because Ibrahim objected to the Zoom testimony before trial, we review for harmless error. *Henderson*, 210 Ariz. at 567 ¶ 18; *see also Coy v. Iowa*, 487 U.S. 1012, 1021 (1988) (applying harmless error standard to denial of face-to-face confrontation).

¶28 Ibrahim contends the State did not prove an important public policy was at stake or that the circumstances surrounding Phares's ability

to travel showed case-specific necessity. He also argues that under the Arizona Constitution, allowing Zoom testimony was automatic error because the constitution expressly states that "the accused shall have the right . . . to meet the witnesses against him *face to face*[.]" Ariz. Const. Art. II § 24 (emphasis added). But we need not address Ibrahim's arguments of error because even if we assume error, it was harmless.

¶29         An error is harmless if it "did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. at 567 ¶ 18. In making this determination, we will not consider "whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation [because] such an inquiry would obviously involve pure speculation[.]" *Coy*, 487 U.S. at 1021–22. Rather, we determine harmless error by considering whether "the other evidence [was] overwhelming" and Ibrahim was able to present his defense. *State v. Romero*, 240 Ariz. 503, 508 ¶ 8 (App. 2016). We also analyze whether the erroneously admitted testimony was cumulative, primary evidence, or prejudicial. *Id.*

¶30         We begin with whether the other evidence admitted at trial overwhelmingly established Ibrahim's guilt, as this factor "alone may be dispositive." *Id.* at 508 ¶ 9. Based on the record, we cannot draw this conclusion. Although the State presented direct evidence of the assault through Mary's testimony, Ibrahim sought to weaken Mary's credibility by highlighting alleged inconsistencies, such as the Flagstaff sign. Further, because there were no witnesses to the assault, the State's remaining evidence was circumstantial and inconsistent with Ibrahim's testimony. Thus, in light of the conflicting evidence, we cannot conclude the State overwhelmingly established Ibrahim's guilt.

¶31         We next consider whether Ibrahim was able to present his defense. Aside from Mary's motive to fabricate the allegation, *supra* ¶¶ 19–25, Ibrahim's defense was that the assault did not occur in Arizona. But even though Phares testified via Zoom, Ibrahim had the opportunity to cross-examine her about her testimony of the truck's GPS coordinates. *Cf. United States v. Owens*, 484 U.S. 554, 559 (1988) (stating that the "Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination'" (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987))). Further, the Zoom platform permitted trial participants to view Phares during her testimony. Phares was able to see exhibits and answer questions regarding them. And the record is devoid of any evidence the platform software experienced interruptions, loss of video feed, lag, muting, or any other problems that interfered with the ability to hear, see, and assess Phares's demeanor, expressions, tone, or body language. And Phares

testified on cross that she thought Mary "contacted [her] on the road somewhere . . . around Flagstaff," which tended to indicate the assault happened before reaching that location and therefore supported Ibrahim's jurisdiction defense. Thus, Phares's Zoom testimony did not prevent Ibrahim from presenting his defense.

¶32        Phares's testimony was also largely cumulative, rather than primary evidence. Evidence is cumulative if it "supports a fact otherwise established by existing evidence," *Romero*, 240 Ariz. at 510 ¶ 17 (citation modified), whereas primary evidence is generally the "strongest evidence produced at trial," *see id.* at 509 ¶ 14 (quoting *State v. Ontiveros-Loya*, 237 Ariz. 472, 478 ¶ 22 (App. 2015)). Ibrahim argues Phares's testimony was not cumulative because "no other witnesses from the Missouri investigation . . . testified to the same evidence" and Phares "was a primary witness whose testimony also included observations about the victim's bruises and demeanor and credibility in a highly disputed credibility contest."

¶33        But the information Phares testified to was established through other evidence. For example, Phares testified that Mary sent her photos of bruises on her legs, but during Mary's testimony, the jury saw photos of the bruises. Ibrahim also contends that the State could not have established territorial jurisdiction without Phares. Not so. Phares did not provide significant testimony related to jurisdiction. Phares testified generally about what the GPS records showed, but a detective later provided an extensive analysis of those records on when and where the truck stopped during the cross-country trip. So, even without Phares's testimony, the State still had substantial evidence establishing territorial jurisdiction. Thus, Phares's testimony was cumulative and not primary evidence.

¶34        Finally, we consider prejudice, which is "implicit in all factors[.]" *Id.* at 511 ¶ 21. But beyond any implied prejudice, Ibrahim did not point to any specific prejudice in the record, and based on our analysis, we discern none.

¶35        "Looking at the trial record as a whole," though we cannot say the evidence of guilt was overwhelming, nevertheless, this record establishes Ibrahim was able to present his defense despite use of Zoom, Phares's testimony was cumulative and not primary, and Ibrahim has not adequately established any specific prejudice resulting from Phares testifying remotely via Zoom. *Id.* at 511 ¶ 22. Therefore, we conclude that any assumed error was harmless beyond a reasonable doubt.

## CONCLUSION

¶36         We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR